UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE MENDEZ RODRIGUEZ, *et al.*,

Petitioners,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-02620-GJL

ORDER GRANTING PETITIONER JOSE MENDEZ RODRIGUEZ'S PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Jose Mendez Rodriguez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody and an order enjoining his future re-detention without prior notice or hearing. Dkt. 1.[1] Respondents to the Petition include Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Markwayne Mullin (the

[1] Petitioner Mendez Rodriguez jointly filed his claims for federal habeas relief with Petitioner Saron Habte. Dkt. 1. The Court resolves only the claims for relief asserted by Petitioner Mendez Rodriguez at this time and will addresses the Petition by Petitioner Habte in a separate Order.

Department of Homeland Security ("DHS") Secretary), the DHS, Todd Blanche (U.S. Attorney General), and Bruce Scott (Warden of the NWIPC).[2]

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Petitioner's release and injunctive relief as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

The underlying issue and factual background of this action are troubling and familiar. Petitioner Jose Manuel Rodriguez is a citizen of Venezuela who fled the country with his partner and child after experiencing threats and fearing persecution based on his political beliefs. Dkt. 1 at 12; *see also* Dkt. 1-2. Petitioner entered the United States on December 12, 2023, and was detained that same day. Dkt. 1 at 13; *see also* Dkt. 1-2; Dkts. 11-1, 11-3. Two days later, immigration officials released Petitioner on an order of recognizance ("OREC"). Dkt. 1 at 13; Dkt. 10 at 2; *see also* Dkts. 1-2, 11-3. In December 2024, Petitioner timely applied for asylum, and his application remains pending. Dkt. 1 at 13; *see also* Dkt. 1-2. Petitioner has employment authorization and works as a delivery driver for Amazon. Dkt. 1 at 13–14; *see also* Dkt. 1-2.

The parties dispute the nature of Petitioner's apprehension. On June 1, 2026, Petitioner claims immigration officers abruptly surrounded him as he was leaving work at an Amazon warehouse and stated that they had a warrant for his arrest. Dkt. 1 at 14; Dkt. 1-2. Respondents contend that, on the date of Petitioner's arrest, ERO discovered that Petitioner was residing in Oregon despite having failed to notify immigration officials of his change of address. Dkt. 10 at 2 (Hubbard Declaration). Respondents also assert Petitioner's OREC was revoked for failure to comply with conditions of release. *Id.*; *see also* Dkt. 9 at 3. It is unclear from Respondents'

[2] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 3.

evidentiary submissions, however, when ERO discovered Petitioner's alleged failure to update his address proximate to his re-detention and what purported failure to comply with release conditions prompted the revocation of his release.

By contrast, in a sworn Declaration, Petitioner states that arresting officers advised he was being detained for failure to appear, even though he had no scheduled hearings around that time. Dkt. 1-2 at 3 (Mendez Rodriguez Declaration). Petitioner further states he was not given an opportunity to explain, and that the officers detained him, and transferred him to the NWIPC. *Id.*; Dkt. 1 at 14.

Nevertheless, Respondents do not dispute that Petitioner was re-detained without receiving prior notice of his apprehension, nor a hearing before a neutral decisionmaker to determine whether his re-detention was justified based upon flight risk or dangerousness. *Id.* at 15.

## II. PROCEDURAL BACKGROUND

Petitioner filed the instant Petition, and supporting evidence, pursuant to 28 U.S.C. § 2241 on July 24, 2026. Dkt. 1; Dkt. 1-2. On August 10, 2026, Respondents filed a Return and supporting evidence. Dkt. 9; Dkt. 10; Dkts. 11, 11-1–11-4. On August 14, 2026, Petitioner filed a Traverse. Dkt. 13.

Petitioner alleges that Respondents violated his procedural due process rights by re-detaining him without pre-deprivation notice and a hearing. Dkt. 1; Dkt. 13. Respondents disagree, claiming that Petitioner's re-detention was warranted and within Respondents' statutory authority. Dkt. 9.

Having reviewed the Parties' arguments, the factual record, and the relevant legal authority, the Court concludes that Petitioner did not receive constitutionally adequate process and is entitled to some, but not all, of the relief requested in the Petition.

## III. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## IV. DISCUSSION

The Court again rejects Respondents' mandatory detention argument and its continuing effort to expansively wield the discrete authority of 8 U.S.C. § 1225(b) as a cudgel to abruptly and without notice confine noncitizens such as Petitioner who had been released on an OREC for more than two years while seeking asylum from alleged political persecution. *See, e.g., Singh v. Mullin*, No. 2:26-cv-01730-GJL, 2026 WL 2111274, at *2 (W.D. Wash. July 22, 2026) ("[T]his Court has previously rejected [the Government's] mandatory detention argument and does so again here."). And even if the Court were somehow persuaded by this misplaced argument,

Respondents must still comply with due process. Thus, the Court turns to whether Petitioner's continued detention without an individual custody determination comported with due process under the familiar framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Each of the three *Mathews* factors weighs in Petitioner's favor.

First, Petitioner's private interest is substantial. Petitioner lived in the United States for years before Respondents abruptly returned him to physical custody. Dkt. 1-2. He is seeking asylum, is gainfully employed, is involved in multiple recreational soccer leagues, and maintains a stable home with his wife and four-year-old son (who has been diagnosed with autism and has reportedly experienced emotional and behavioral dysregulation since his father's re-detention). *Id.* Petitioner's interest in maintaining that liberty, and avoiding renewed physical confinement, lies at the core of the liberty interests protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). The first *Mathews* factor weighs heavily in Petitioner's favor.

Second, the lack of procedures employed here created a substantial risk of erroneous deprivation, while additional process would offer significant value. Petitioner was re-detained without advance notice that his liberty would be revoked and without an opportunity to contest the factual or legal basis for his renewed detention before a neutral decisionmaker. *See* Dkt. 1; Dkt. 1-2; Dkt. 9. Notice and a prompt custody hearing therefore would have provided substantial value by permitting Petitioner an opportunity to respond and prepare for his possible re-detention and permitting a neutral decisionmaker to test the factual and legal grounds asserted for depriving Petitioner of his liberty. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137; *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

Respondents offer the thin argument that Petitioner "has not requested a bond hearing from the Immigration Court," Dkt. 9 at 4, but there is no evidence immigration officials even

*notified* Petitioner of his *right* to request such a hearing. Moreover, Respondents maintain that Petitioner is subject to mandatory detention and thus not entitled to an individualized custody review by an IJ. *Id.* at 4–5. As such, Respondents' allegation that Petitioner did not request a hearing that they maintain he is not entitled to simply does not advance their position. Thus, the second *Mathews* factor also favors Petitioner.

Third, the Court recognizes the Government's substantial interest in the efficient administration and enforcement of the immigration laws, including its lawful authority to detain noncitizens when appropriate. But as this Court has also repeatedly recognized, custody hearings are routine proceedings, and the marginal administrative burden associated with providing such review is insufficient to outweigh the substantial liberty interest implicated by physical detention. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025). The third *Mathews* factor therefore also favors Petitioner.

On balance, the *Mathews* factors establish that the absence of any process afforded here was constitutionally inadequate. Accordingly, the Court concludes that Respondents re-detained Petitioner without providing the process due to him under the Fifth Amendment to the United States Constitution.

The ability for Petitioner to be heard and challenge the reasons for his re-detention in a neutral forum serves "as a crucial bulwark against the unfettered disregard of individual liberty interests." *G.S. v. Hermosillo*, No. 25-cv-2704-TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026). Despite its constitutionally critical utility and the limited administrative burden it

entails, Respondents failed to provide such procedural protections in this case and many others like it.[3]

## V. REMEDY

### A. Immediate Release

Having determined that Petitioner was re-detained without the constitutionally required process, the Court now determines the appropriate remedy for his unlawful confinement. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it

---

[3] While the Court does not undertake a true accounting of factually similar cases wherein Respondents detained noncitizens without the required processes, it observes that some of the earliest cases reaching that conclusion have been cited more than one-hundred times in subsequent decisions from this District alone. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) (according to Westlaw, this decision has been cited 242 times by courts in this District since August 19, 2025, with more than 650 total citing references); *Ramirez Tesara*, 800 F. Supp. 3d (W.D. Wash. 2025) (similarly this decision has been cited 148 time by courts in this District since September 12, 2025, with more than 250 total citing references on Westlaw).

These decisions are also cited and echoed by district courts across the country. *See, e.g. Perez Majano, v. Rokosky*, No. CV-26-05535-PHX-JZB, 2026 WL 2508262 (D. Ariz. Aug. 26, 2026); *Romero Avila v. Warden, Adelanto ICE Processing Center*, No. 5:26-CV-02701-KS, 2026 WL 2203141 (C.D. Cal. July 29, 2026); *Diaz v. Albarran*, No. 3:25-CV-09837-JSC, 2026 WL 2499439 (N.D. Cal. Aug. 25, 2026); *Cerna-Carranza v. LaRose*, No. 3:26-CV-4578-JES-JLB, 2026 WL 2446130 (S.D. Cal. Aug. 20, 2026); *Carlos U.G. v. Warden of the California City Det. Facility,* No. 1:26-CV-04427-MWJS, 2026 WL 1999947 (E.D. Cal. July 10, 2026);*Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159 (D. Nev. 2025); *J-S-D-V v. Hernandez*, No. 6:26-CV-00470-MC, 2026 WL 1346346 (D. Or. May 14, 2026); *Wu v. Stamper*, No. 1:26-CV-00090-SDN, 2026 WL 608286 (D. Me. Mar. 4, 2026); *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026); *Omar v. U.S Immigr. & Customs Enf't*, No. CV 26-00443-BAJ-EWD, 2026 WL 1663009 (M.D. La. May 29, 2026); *A.S.M. v. Lyons*, No. 26 C 5381, 2026 WL 2042774 (N.D. Ill. July 15, 2026); *Gonzalez Arias v. Woodbury Cnty. Jail*, No. C26-4041-LTS-MAR, 2026 WL 1735035 (N.D. Iowa June 16, 2026); *Vang v. Bondi*, No. 0:26-CV-1381, 2026 WL 458195 (D. Minn. Feb. 18, 2026); *Ekenge v. Baltazar*, No. 1:26-CV-00630-SBP, 2026 WL 617341 (D. Colo. Mar. 5, 2026); *Diallo v. Orozco*, No. 2:26-CV-00066-MLG-JHR, 2026 WL 608746 (D.N.M. Mar. 4, 2026);*Martinez Marcano, v. Johnson*, No. CIV-26-1389-J, 2026 WL 2350131 (W.D. Okla. Aug. 13, 2026); *Orellana v. Noem*, 807 F. Supp. 3d 745 (W.D. Ky. 2025) (reaching same conclusion without citation); *Ortiz Gutierrez v. Raycraft*, 821 F. Supp. 3d 934 (S.D. Ohio 2026) (same)*; Khabazha v. United States Immigr. & Customs Enf't*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *9 (S.D.N.Y. Nov. 25, 2025) (same); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923 (W.D. Tex. Oct. 21, 2025) (same); *Rios Porras v. O'Neill*, No. CV 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025) (same, collecting cases, and observing that "[t]he law is piled sky high against the Government's position.").

'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)).

This Court and others in this District have ordered conditional release where, for example, the record showed that ICE officials performed some individualized assessment of flight risk, dangerousness, or noncompliance with release conditions before re-detaining a petitioner and that assessment provided the basis for the re-detention decision. *See, e.g., Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *13 (W.D. Wash. Mar. 12, 2026); *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026); *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026); *see also Musaev v. Hermosillo*, No. 2:26-CV-00522-RAJ, 2026 WL 925611, at *8 (W.D. Wash. Apr. 6, 2026) (ordering immediate release where, despite some individualized review by immigration officials, there was no allegation or evidence showing the government's re-detention decision was premised on such review).

Respondents contend that Petitioner's re-detention followed an individualized determination that he had violated the conditions of his release by failing to update his address. Dkt. 9 at 7. The evidence they submit, however, does not establish that proposition. Respondents rely on a declaration from an ERO official who states that he reviewed Petitioner's immigration records and is familiar with his case. Dkt. 10 (Hubbard Declaration). According to the Declaration, on the date of Petitioner's arrest, ERO discovered that Petitioner was residing in Oregon despite having failed to notify immigration officials of his change of address. *Id.* at 2. The declaration further states that Petitioner was taken into custody during a traffic stop in Portland pursuant to an arrest warrant and that his OREC was subsequently revoked for failure to comply with the conditions of his release. *Id.*

Even assuming *arguendo* the declarant has an adequate basis for these assertions, the Declaration does not establish that Petitioner's failure to update his address was actually considered by immigration officials before his re-detention and formed the basis for the decision to take him into custody. The declaration instead establishes, at most, that immigration records reflected a failure to update Petitioner's address and that his release was *later* revoked on that basis; it does not establish that officials conducted an individualized assessment of that circumstance *before* deciding to re-detain him.

Nor is such an inference supported by the record as a whole. The only evidence concerning what arresting officers contemporaneously represented as the basis for Petitioner's detention comes from Petitioner himself. In his own Declaration, Petitioner states that officers told him he was being detained for failing to appear, even though he had no scheduled court appearance at that time. Dkt. 1-2 at 3. Respondents offer no contemporaneous record or firsthand declaration contradicting that account or otherwise demonstrating that immigration officials evaluated Petitioner's alleged failure to update his address *before* deciding to return him to custody.

On this record, the Court cannot find that immigration officials performed an adequate individualized assessment before re-detaining Petitioner, much less that such an assessment actually formed the basis for the re-detention decision. It is not clear that Respondents' reliance on Petitioner's failure to update his address was not an after-the-fact justification for a decision already made.

Under these circumstances, the Court concludes that immediate release, rather than release conditioned on a post-deprivation bond hearing, is the appropriate remedy in this case. *See Kirykovich v. Hernandez,* No. 2:26-CV-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash.

Apr. 1, 2026) (declining to issue a conditional writ, noting "it would reward the government for detaining first and asking questions later.").

**B. Injunctive Relief**

Petitioner also requests injunctive relief. Dkt. 1 at 22. Particularly, Petitioner asks that Respondents be prohibited from re-detaining him during the pendency of his removal proceedings without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks. *Id.* The Court concurs that, consistent with the requirements of due process, Respondents must provide written notice and a hearing before a neutral decisionmaker in conjunction with future re-detention decisions while Petitioner's removal proceedings are pending. With respect to the timing and evidentiary burden required, however, the Court declines to prescribe a particular procedural framework for all possible re-detention decisions Petitioner may face.

## VI. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1) Petitioner's Petition (Dkt. 1) is **GRANTED IN PART**;

(2) Respondents **SHALL release** Petitioner Jose Mendez Rodriguez from custody **within 24 HOURS** of this Order under conditions consistent with those in place at the time of his re-detention, unless Respondents choose to impose less restrictive conditions;

(3) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT** re-detain Petitioner unless an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal; and

(4) Upon release, Respondents **MUST** return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents; and

(5) Respondents **SHALL** file a certification within **48 HOURS** of the issuance of this Order, confirming that the Petitioner has been released from custody and providing the date and time of his release.

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 28th day of August, 2026.

Grady J. Leupold
United States Magistrate Judge